J-S60023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                     :            PENNSYLVANIA
                                     :
             v.                        :
                                     :
                                     :
GERALD WRIGHT                       :
                                     :
            Appellant             :    No. 700 MDA 2018

Appeal from the PCRA Order April 17, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000752-1996,
CP-22-CR-0000914-1996

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.*

MEMORANDUM BY NICHOLS, J.:            **FILED FEBRUARY 21, 2019**

Appellant Gerald Wright[1] appeals *pro se* from the order dismissing his serial petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims that he met the newly discovered evidence and governmental interference exceptions.  **See** 42 Pa.C.S. § 9545(b)(1)(i)-(ii). We affirm.

This Court previously summarized the facts underlying Appellant's convictions as follows:

> On December 14, 1995, Roberto Vasquez [(Victim)] died of a gunshot wound to the back.  Ediberto Quinones Plaza, Jr. was with [Victim] on the night of the murder.  [Victim] and Mr. Quinones left a friend's house around 1:00 a.m. on December 14, 1995. They walked south on 14th Street towards Derry Street in

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Appellant is also referred to as Gerard Wright throughout the certified record.

Harrisburg and noticed that a small, black, four door car was parked. The occupants of this vehicle asked [Victim] as he passed by, whether he had any money or drugs. There were three people in the car. At trial, Mr. Quinones identified [Appellant] as the driver of this vehicle, Tito McGill was the front passenger and Curtis Govan was identified as the rear passenger. Mr. Quinones testified that Curtis Govan and Tito McGill exited the vehicle and again asked if they had any money or drugs. Curtis Govan pointed a gun at [Victim]. Mr. Quinones started to run and he then heard five gunshots. [Victim] was then found by Mr. Quinones laying on the ground.[2]

Victor Rivera, an investigator with the Harrisburg Police Department, testified at trial. He stated that his initial interview with Mr. Quinones revealed that the incident involved three black men who were in a dark colored vehicle. Mr. Quinones stated that he had seen these three males before but that he did not know their names. Mr. Quinones was brought to the police station to look at photographs but he could not identify anyone at that point. On the evening of December 15, 1995, Investigator Rivera received information that [Appellant] was involved with the murder. [Appellant] was then identified by Mr. Quinones when he saw him on the street. Mr. Quinones again identified [Appellant] as the driver of the vehicle and [Appellant] was arrested as a result of these identifications. [Appellant] was arrested on December 15, 1995, Curtis Govan was arrested on December 17, 1995, and Tito McGill was arrested on April 11, 199[6].[3]

_____

[2] Appellant was born on May 21, 1977, and was eighteen years and seven months old when he committed the offenses.

[3] Appellant was tried jointly with codefendants Govan and McGill. In addition to Quinones's testimony, a Commonwealth witness, Yolanda King testified that she overheard Appellant and Govan discussing why they killed someone. *See* N.T., 8/5 to 8/9/96, at 337-38. In their defenses, Appellant and codefendant Govan presented alibi witnesses indicating that they were at home watching movies at the time of the shooting. *See id.* at 496-97, 518-19.

The Commonwealth called Barry Lewis as one of its rebuttal witnesses. *See id.* at 572-73. Lewis testified that he had a short conversation with Govan on the street near the scene of the shooting. *Id.* at 574-75. Shortly after Lewis

*Commonwealth v. Wright*, 1111 HBG 1997, at 2-3 (Pa. Super. filed Mar. 29, 1999) (unpublished mem.) (citations omitted).

The PCRA court set forth the procedural history of this case as follows:

On or about January 18, 1996, [Appellant] was charged with second[-]degree murder, robbery, criminal conspiracy, and recklessly endangering another person for events occurring on December 14, 1995. On August 9, 1996, following a jury trial, [Appellant] was found guilty of murder and sentenced to life without parole. [Appellant] filed a direct appeal with the Pennsylvania Superior Court on November 18, 1997. [Appellant]'s appeal was denied and his judgment of sentence was affirmed on [March 29, 1999]. [Appellant] filed for [a]*llocatur*, which was unsuccessful. From 2002 until 2008, [Appellant] filed numerous appeals and PCRAs which proved unsuccessful.[4]

_____

and Govan went their separate ways, Lewis saw a black car drive past him and he then heard gunshots. *Id.* at 574-75. Lewis did not identify Govan, McGill, or Appellant as being in the car and asserted he was not able to identify any occupants of the car. *See id.* at 575, 581. At trial, Govan's counsel indicated that counsel and Lewis spoke before trial and that Lewis told counsel that Govan was not in the car. *Id.* at 581.

[4] Appellant was represented by counsel for his first PCRA petition. *See Commonwealth v. Wright*, 1334 MDA 2002, at 2 (Pa. Super. filed July 28, 2003) (unpublished mem.). In his second *pro se* PCRA petition, Appellant asserted that a previously unknown witness, William Gardner, would have testified that "Hispanic individuals, and not African-American individuals, robbed and shot [Victim] and Quinones." *Commonwealth v. Wright*, 1077 MDA 2005, at 6 (Pa. Super. filed Apr. 4, 2006) (unpublished mem.). This Court concluded that Appellant's claim was time-barred. *Id.* at 6-7. Specifically, we noted that Appellant had come into possession of Gardner's statement while the appeal from his first PCRA petition was pending, but failed to file his second PCRA petition within sixty days of the conclusion of his first PCRA appeal. *Id.* (discussing *Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000)).

On or about August 10, 2012, [Appellant, acting *pro se*,] filed the instant motion for post-conviction collateral relief [arguing that he was entitled to relief due to **Miller v. Alabama**, 567 U.S. 460 (2012). The PCRA court appointed PCRA counsel, who filed a supplemental petition raising the same argument as Appellant.] A stay order was entered pending the decision in **Commonwealth v. Cunningham**, 81 A.3d 1 ([Pa.] 2013).[5]

PCRA Ct. Mem. Order, 3/27/18, at 1-2.

During the stay, and while still represented by counsel, Appellant filed numerous *pro se* motions and supplemental PCRA petitions. Notably, on October 7 and 8, 2013, the PCRA court received Appellant's *pro se* supplemental petitions, which we summarize as follows.

Appellant claimed that he received an October 4, 2017 letter from an investigator, Calvin Johnson, which attached statements made by Barry Lewis on October 7, 2003, and September 26, 2005, numerous years after Appellant's trial.[6] Appellant's *Pro Se* Suppl. Pet., 10/7/13, at 4-5. In his

---

[5] The Pennsylvania Supreme Court in **Cunningham** held that **Miller**'s prohibition against a sentence of mandatory life in prison without the possibility of parole for juvenile offenders did not apply retroactively. **Cunningham**, 81 A.3d at 11. On January 25, 2016, the United States Supreme Court in **Montgomery v. Louisiana**, 136 S. Ct. 718 (2016), held that **Miller** applied retroactively, overruling **Cunningham**.

[6] The *pro se* supplemental petitions that were received by the PCRA court on October 7 and 8, 2013, included proofs of services that were both dated September 28, 2013. No further evidence established when Appellant delivered his supplemental petitions to prison officials for mailing. **See Commonwealth v. Little**, 716 A.2d 1287, 1288-89 (Pa. Super. 1998) (discussing the prisoner mailbox rule).

- 4 -

October 7, 2003 statement, Lewis described the car involved in the shooting as follows:

> I know that the car was a black Jetta. I assume that there was three people of Puerto Rican origin inside the car. The reason why I say this is because the back window was down and I could see the back passenger, he looked to be Puerto Rican.

Statement of Barry Lewis, 10/7/03. Additionally, Lewis asserted:

> I thought at trial that I was testi[y]fing in Mr. Govan's favor although the D.A[.] wanted me to change some of the things that happen[e]d that night. See, I was on parole for D.U.I[.] and burglary at the time of Mr. Govan's trial and I was going thr[ough] some problems of my own, I was[] under the impression that the D.A[.] would help me out with my problems if I changed what I thought was minor. The fact of the matter is I never seen Mr. Govan at all the night of the shooting Dec. 14th[,] 1995. The majority of my testimony is tru[]thful[] except when I said that I seen Mr. Govan that night.

*Id.* Lewis indicated that he informed Govan's trial counsel of these matters before trial. *Id.*

In his September 26, 2005 statement, Lewis denied seeing codefendant Govan on the night of the shooting. Interview of Barry Lewis, 9/26/05, at 2-3 (unpaginated). Lewis repeated the substance of his 2003 statement that he did not see Govan around the time of the shooting.[7] When asked how many of the occupants of the car he was able to see, Lewis responded:

---

[7] We note that codefendant Govan filed a second PCRA petition in 2004 alleging that Lewis's 2003 statement constituted after-discovered evidence. *See Commonwealth v. Govan*, 505 MDA 2007, at 2 (Pa. Super. filed Nov. 16, 2007) (unpublished mem.). This Court affirmed the dismissal of that

I know there were two in the back seat because the window was down, but I couldn't tell how many were in the front. I like to say the individuals who were on trial were not one of the individuals in the Jetta.

*Id.* at 3.

Appellant attached to his October 2013 supplemental PCRA petitions the investigator's notarized statement that Lewis's recantations were not available to Appellant before August 4, 2013. The PCRA court forwarded Appellant's supplemental filings to counsel and directed that the matter remain stayed. Counsel took no further action with respect to Appellant's *pro se* filings.

On January 25, 2016, the United States Supreme Court decided **Montgomery**. On March 22, 2016, PCRA counsel filed both a motion for leave to amend Appellant's PCRA petition and an amended PCRA petition based on **Montgomery**.[8]

---

petition because Lewis informed Govan's trial counsel of the alleged after-discovered evidence before trial. **See id.**

[8] The record indicates that on June 28, 2016, the United States District Court for the Middle District of Pennsylvania requested that the Commonwealth respond to the order to show cause as to why Appellant's petition for writ of *habeas corpus* should not be granted. The Commonwealth failed to respond and, on August 8, 2016, the district court granted Appellant's petition and referred the case to the trial court for re-sentencing. On August 23, 2016, the trial court stayed re-sentencing pending the decision in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017). There is no indication that either the federal court or the trial court was aware of Appellant's age at the time of the offense when entering their orders.

On March 5, 2018, PCRA counsel sought to withdraw from representation pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). PCRA counsel indicated that Appellant "originally thought that the date of the offense was February 14, 1995, when it was in fact on December 14, 1995, **after** [Appellant] had turned eighteen (18)."[9] Mem. of Law in Support of No Merit Letter Pursuant to **Turner** and **Finley**, 3/5/18, at 2 (emphasis added).

On March 27, 2018, the PCRA court entered its notice of intent to dismiss Appellant's PCRA petition because Appellant was eighteen years of age at the time of the offense. Mem. Order, 3/27/18. The PCRA court also granted PCRA counsel's motion to withdraw. **Id.**

On April 9, 2018, the PCRA court docketed Appellant's *pro se* response to PCRA counsel's motion to withdraw, as well as a supplemental petition under the PCRA.[10] In the supplemental petition, Appellant again alleged that he met the newly discovered facts exception because of the new facts he raised in his October 7, 2013 petition regarding Barry Lewis. **See** Suppl. Pet.

---

[9] Appellant's appointed PCRA counsel did not address Appellant's *pro se* filings when seeking leave to withdraw.

[10] Although Appellant did not move for leave to amend his supplemental PCRA petition, in its April 17, 2018 order dismissing Appellant's PCRA petition, the PCRA court implicitly granted Appellant leave to amend his PCRA petition. **See** Order, 4/17/18, at n.1.

Under the PCRA, 4/9/18, at 2-3.  Additionally, Appellant asserted that he met the governmental interference exception because the PCRA court failed to entertain his multiple requests for trial transcripts and he only received the trial transcripts in July of 2012.[11]  *Id.* at 5-6.

On April 17, 2018, the PCRA court dismissed Appellant's PCRA petition. The court's order included a footnote noting that Appellant's supplemental petition raised a "myriad of issues," but that he had not satisfied the time-bar requirements of the PCRA.  Order, 4/17/18.[12]

Appellant filed a timely notice of appeal and court-ordered concise Pa.R.A.P. 1925(b) statement.  On May 10, 2018, the PCRA court entered a statement *in lieu* of a memorandum opinion, referring to its May 27, 2018 notice of intent to dismiss.

Appellant raises the following issue on appeal:  "The PCRA court erred when it held that the Appellant[']s PCRA petition was untimely for failing to

_____

[11] In relevant part, Appellant's claims based on the trial transcripts included (1) the trial court lacked subject matter jurisdiction to convict Appellant of second-degree murder because he was charged with general homicide; (2) the Commonwealth knowingly used the perjured testimony of Quinones and King; and (3) the Commonwealth suppressed evidence material to King's trial testimony.  Suppl. Pet., 4/9/18, at 9, 11.  Appellant also raised claims of ineffective assistance of counsel.

[12] In its April 17, 2018 order dismissing Appellant's PCRA petition, the PCRA court relied on its Rule 907 notice, which addressed Appellant's *Miller* claim. In that regard, we agree that Appellant was not entitled to relief because he does not dispute that he was eighteen years old when he committed the subject offenses.  *See Commonwealth v. Furgess*, 149 A.3d 90, 94 (Pa. Super. 2016).

meet any of the time exceptions in 42 Pa.C.S. § 9545(b)(1)(i)-(iii)."
Appellant's Brief at 7.  Appellant claims that he met the newly discovered facts
exception and the governmental interference exceptions to the PCRA's time
bar.  *Id.* at 7-9.  He raises essentially the same claims presented in his October
2013 and April 9, 2018 supplemental petitions, namely, that (1) he recently
discovered Lewis's 2005 recantation; and (2) he was prevented from raising
claims because he was unable to obtain his trial transcripts.

Our standard of review for the dismissal of a PCRA petition is limited to
"whether the record supports the PCRA court's determination and whether the
PCRA court's decision is free of legal error."  *Commonwealth v. Lawson*, 90
A.3d 1, 4 (Pa. Super. 2014) (citation omitted).

It is well-settled that "the timeliness of a PCRA petition is a jurisdictional
requisite."  *Commonwealth v. Brown*, 111 A.3d 171, 175 (Pa. Super. 2015)
(citation omitted).  A PCRA petition "including a second or subsequent petition,
shall be filed within one year of the date the judgment becomes final."  42
Pa.C.S. § 9545(b)(1).  A judgment is final "at the conclusion of direct review,
including discretionary review in the Supreme Court of the United States and
the Supreme Court of Pennsylvania, or at the expiration of time for seeking
the review."  42 Pa.C.S. § 9545(b)(3).

Courts may consider a PCRA petition filed more than one year after a
judgment of sentence becomes final only if the petitioner pleads and proves
one of the following three statutory exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Moreover, a petitioner must file his petition within sixty days of the date the claim could have been presented.[13] *See* 42 Pa.C.S. § 9545(b)(2) (subsequently amended eff. Dec. 24, 2018).

Appellant claims that he discovered new facts based on Lewis's 2003 and 2005 recantations. Appellant further relies on an investigator's assertions that Lewis's statements were unavailable until August 4, 2013.

The Pennsylvania Supreme Court recently noted that 42 Pa.C.S. § 9545(b)(1)(ii)

permits an otherwise untimely PCRA petition to be filed if it pleads and proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" As this Court recently explained,

---

[13] Although Appellant had a counseled PCRA petition pending in the PCRA court at the time he allegedly discovered the "new facts," he was still required to file a PCRA petition or a supplemental petition within sixty days of discovering these new facts. *See Commonwealth v. Montgomery*, 181 A.3d 359, 364-65 (Pa. Super. 2018) (*en banc*) (holding that while "a PCRA court may not entertain a new PCRA petition when a prior petition is still under appellate review[,]" a PCRA court may "consider[] a subsequent petition, even if a prior petition is pending, so long as the prior petition is not under appellate review").

"[w]hen considering a claim seeking to invoke section 9545(b)(1)(ii), the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." This does not require any merits analysis of the underlying claims for relief. Our cases have stated that to qualify as a new fact, "the information may not be part of the public record." In addition, the item must "not merely [be] a newly discovered or newly willing source for previously known facts." Furthermore, this Court has explained that "[d]ue diligence does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort to obtain the information upon which a claim is based."

*Commonwealth v. Staton*, 184 A.3d 949, 955-56 (Pa. 2018) (citations omitted).

Instantly, the record reveals that Appellant was aware of Lewis, who testified at trial and also made himself available to the defense before trial. *See* Statement of Barry Lewis, 10/7/03 (indicating that Lewis told codefendant Govan's counsel before trial that Lewis saw a Puerto Rican male in the backseat of the car). Lewis's recantations were also the subject of a PCRA proceeding by Govan beginning in 2004. Despite these circumstances, Appellant did not establish that he took any steps to investigate Lewis or obtain Lewis's 2003 and 2005 recantations before 2013. Therefore, Appellant failed to establish due diligence to obtain Lewis's recantations.[14] *See Staton*,

_____

[14] We add that even if Lewis's recantation only became available to Appellant in 2013, he was already aware of the exculpatory allegations contained in Lewis's recantations, *i.e.*, that the occupants of the suspect vehicle were Hispanic and not African-American and that codefendant Govan was not at the scene of the shooting. *See Wright*, 1077 MDA 2005, at 6; N.T., 8/5 to 8/9/96, at 496-97, 518-19.

184 A.3d at 955-56. Accordingly, our review reveals no error in the PCRA court's decision that Appellant failed to establish a timeliness exception.[15] **See Lawson**, 90 A.3d at 4.

Appellant next contends that the PCRA court did not honor his requests for transcripts and that he only received his trial transcripts from the Pennsylvania Innocence Project on July 27 or 29 of 2012. Appellant's Brief at 8; Suppl. Pet. Under the PCRA, 4/9/18, at 6. According to Appellant, he was unable to develop several claims without access to the transcripts.

Regarding Appellant's governmental interference exception claim, it is well settled that

> [t]he governmental interference exception permits an otherwise untimely PCRA petition to be filed if it pleads and proves that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States." 42 Pa.C.S. § 9545(b)(1)(i). In other words, [a petitioner] is required to show that but for the interference of a government actor "he could not have filed his claim earlier."

**Staton**, 184 A.3d at 955 (some citations and internal alteration omitted).

Instantly, Appellant contends that the PCRA court did not honor his requests for transcripts and that he only received his trial transcripts from the Pennsylvania Innocence Project on July 27 or 29 of 2012. Appellant, however,

---

[15] Because Appellant failed to demonstrate that he exercised due diligence, we need not consider whether Appellant filed his *pro se* supplemental petition within sixty days of receiving the investigator's August 4, 2013 letter.

first raised claims based on the trial transcripts in October of 2013. Therefore, Appellant failed to raise his claims within sixty day of receiving his trial transcripts. *See* 42 Pa.C.S. § 9545(b)(2).

In any event, the record establishes that by the time of trial, Appellant had all information necessary to raise his claims based on the trial court's subject matter jurisdiction, the testimony of Quinones and King, and the Commonwealth's alleged failure to disclose evidence rebutting King's trial testimony. Because Appellant could have presented these claims in his direct appeal or his counseled first PCRA petition, he failed to establish the exception for governmental interference. *See* 42 Pa.C.S. § 9545(b)(1)(i); ***Staton***, 184 A.3d at 955. Therefore, the PCRA court properly rejected Appellant's assertion that the failure to honor his requests for the trial transcripts should have excused the untimely presentation of his claims. ***See Lawson***, 90 A.3d at 4.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2019